PECK-HAMMOND CO. v. MARY J. WILLIAMS.

1. ASSIGNMENTS. *Contracts.*

   A valid assignment by a builder of all moneys due and to become due to him under a contract with a municipality for the erection of school building is in no way affected by his subsequent conduct in incurring debts for materials and labor.

2. SAME. *Municipalities.*

   A provision in a contract for the erection of a municipal school build-ing that the contractor shall "provide, pay for and furnish all material," etc., is for the benefit of the city alone, and does not entitle a material man to priority of payment over the builder's assignee in case of the builder's insolvency and the insufficiency of the balance due under the contract for the payment of both claims.

FROM the chancery court of Hinds county, first district.

HON. HENRY C. CONN, Chancellor.

The city of Jackson was complainant, and the appellant and appellee, whom the city interpleaded, were defendants, in the court below.

In 1897 the city of Jackson published an advertisement, or notice to bidders, inviting bids for the construction of a public school building, among other particulars of which notice was one to the effect that the successful bidder would be required to secure the payment of all labor and material employed in the construction of the building. One J. G. Wedgeworth, having become the successful bidder, he shortly thereafter entered into a contract with the city to build for it the desired building as described in certain plans and specifications, at a compensation of $15,000, payable on the completion of the building.

In this contract it was stipulated that Wedgeworth would pro-vide, pay for, and furnish all material used in such building, and pay for all labor hired. Wedgeworth executed a bond to

secure the due performance of said contract, and one E. C. Williams, the husband of appellee, became one of the sureties thereon.   Wedgeworth began the construction of the building in September, 1897, and contracted divers debts for building material and labor.   Among them was one with the appellant, the Peck-Hammond Co.   When the building was about half completed, and there still remained about $8,000 due on the contract price, Wedgeworth executed, on December 27, 1897, an assignment of all moneys due and to become due to him by said city in favor of Mrs. M. J. Williams, in payment of certain debts due said Mrs. Williams for material furnished in the construction of said building. . Wedgeworth continued to construct the building, to draw money, to pay for labor, and buy material, and in all other ways exercised full authority and control as before.   On February 21, 1898, when the last payment on the building became due, at a meeting of the building committee it proceeded, with Wedgeworth's concurrence, to set aside the amounts due for labor and materials, and, among other amounts set aside by them, was $813 for appellant, and $113 for the Progress Manufacturing Co., but warrants for the above amounts, though made out on the warrant book in the name of Wedgeworth, were not, in fact, issued, but were held up, Wedgeworth refusing to sign for them so as to authorize their delivery to the parties.   On February 24, 1898, Wedgeworth executed another assignment to Mrs. Williams, and filed it and the first assignment with the city clerk. Later, on a written order from Wedgeworth, the attorneys of Mrs. Williams drew from the city $1,062, which was the balance due Wedgeworth from the city after deducting the reservations of $813 and $113.   After the receipt of this balance, Mrs. Williams continued to insist that the two warrants that had been so reserved should be paid to her by virtue of her assignments, and filed a suit in the circuit court against the city for said amounts.   The Peck-Hammond Co. also filed suit in the circuit court against the city for the balance due ($962.09), where-

upon the city filed its bill of interpleader in this case, paid the money into court, and was discharged. Separate answers were filed by Wedgeworth and Mrs. Williams, and the Peck-Hammond Co. and the Progress Manufacturing Co. filed a joint answer, which was made a cross bill. During the progress of the case it was agreed that the Progress Manufacturing Co. should be paid in full, which was done, and the contest was thus narrowed to the remaining $813, and the claims thereto made by Mrs. Williams and the Peck-Hammond Co. The court below decreed in favor of Mrs. Williams, and this appeal was thereupon prosecuted.

*W. R. Harper,* for appellant.

We think a careful examination of the contract between Wedgeworth and the city will show conclusively that the city, in withholding the money from Peck-Hammond *et al.,* was acting strictly within its contractual rights. No matter what view this court may take of the assignment to Mrs. Williams, it is certain that the transaction could not affect the contract between the city and Wedgeworth. What is the effect of that contract? It is not necessary for us to determine the disputed point as to whether the advertisement in this case became a part and parcel of Wedgeworth's contract. Many courts hold that such is the case. But whether it did or not, it is certain that such advertisement may be offered and read in aid of the proper interpretation of any ambiguous or uncertain term in the written contract. This is elementary law. Now, when Wedgeworth stipulated in his written contract that he would provide, pay for, and furnish all material, etc., he contracted not merely to promise to pay for, but to actually pay for all material used in the building. This is plain from the language itself, and is rendered doubly certain when read in the light of the advertisement for bids. Then, Wedgeworth having agreed that all material should be paid for by him, it became a part and parcel of his contract, and the city had the

right to demand that this term of its contract should be complied with just as much as any other term or provision in such contract, before final payment should be made. Therefore, when the building committee told Wedgeworth that they would not pay him any more money until certain material men, among them the Peck-Hammond Co., should be paid, they were simply exacting what they had a right to exact by the letter and the spirit of their contract with Wedgeworth. If Wedgeworth consented, it was simply a legal coercion, a coercing him into performing what he had agreed to perform. The city felt itself morally bound to protect the Peck-Hammond Co., under its contract, and its building committee undertook to do so. To talk about undue coercion of Wedgeworth into doing what he was legally bound to do under his contract, seems to be trifling with the question. Mrs. Williams certainly had no greater rights under the assignment than Wedgeworth had under the contract with the city. The city, it is true, might have waived this or any other provision in the contract; the Peck-Hammond Co. could not have complained. But the city, instead of waiving, vigorously and successfully insisted on the performance of this stipulation in the contract as to Peck-Hammond Co., and, having collected this money for that company, and now having the money in its hands, we say the Peck-Hammond Co. is clearly entitled to have the same paid over to it, and that the assignment to Mrs. Williams, both by its express terms and by its legal effect, gives to her only the right to demand the balance due Wedgeworth after he had fully complied with all the provisions of his contract with the city. That sum has already been paid her, and, too, paid with the understanding by the city that it was in satisfaction of all of Wedgeworth's claims against the city.

We cite but one case, and invite the court's attention to it, especially as it seems on all fours, essentially, with the case at bar. *Knapp* v. *Swaney,* 56 Mich., 345.

*Alexander & Alexander,* for appellee.

The only objection that can arise to payment under the assignment is that the advertisement or notice to bidders, under which Wedgeworth undertook to build the schoolhouse, states that the contractor shall promptly pay all debts incurred by him in the prosecution of said work, including labor and materials furnished, and for board and lodging for laborers who work thereon. True, the contract also stipulates that Wedgeworth will provide, pay for, and furnish all material and labor for and upon said building. This agreement cannot bind Wedgeworth, so far as outside creditors are concerned. It is for the benefit of the city alone. "A stipulation in a street grading contract that such contract shall not be assigned, nor any of the moneys due thereunder, without the written consent of the city, and that no claim, as against the city, can be asserted by virtue of an assignment without consent, is solely for the benefit of the city, and cannot in a contest wherein no claim is asserted against the city, be invoked by a junior assignee, with consent, to defeat the demand of one to whom the contract has previously been assigned as collateral security for a debt, though without consent of the city." *Fortunato* v. *Patton* (N. Y. App.), 41 N. E., 572, 147 N. Y., 277. In the case at bar the city interpleads, and asserts no claim upon the fund. It is solely a dispute between appellant and appellee. In the case of *Hackett* v. *Campbell,* supra, 42 N. Y. S., 47 (10 App. Div., 523), being a New York case decided in 1896, it is held that a provision in a contract to erect a school building for a city, that no assignment of any sum due the contractor should be made without the written consent of the building committee, is for the benefit of the city alone, and does not prevent an order given by the contractor to a subcontractor for money to become due him, which was filed with the board, from operating as an equitable assignment as against other subcontractors. In the case of *Board of Trustees of School District No. 1* v. *Whalen,* 17 Mont., a case decided in 1896, it is held that a

building contract providing that it should not be assigned by the contractors without the consent of the other party, did not prevent its assignment as collateral security for a loan to complete the building, and especially will the creditors of said contractors not be heard to question the validity of said assignment. In *Shannon* v. *Hoboken,* 37 N. J., Eq., 123, it is held that a contractor is not deprived of his right to make a valid assignment of money due him under a contract to do work for a municipal corporation, by having inserted in the contract a clause entitling the municipal corporation to withhold money earned, and to apply it in payment of labor or materials in case the contractor should neglect to pay therefor.

From the reasoning of the above quoted decision, since the written assignment made by Wedgeworth was valid, and since the city makes no claim to the fund, appellee must be awarded the balance due Wedgeworth by the city. When Wedgeworth made this assignment, and the city was notified of the assignment, the city making no objection thereto, as against all parties, that is, against the city, Wedgeworth and all other creditors of Wedgeworth were bound thereby. In the case of *Gray* v. *New York,* 46 N. Y. Sup. Ct., 494, the facts were as follows: A had a contract with a city, in which it was provided that none of the moneys payable thereunder should be assigned without the assent of the commissioner of public works. A gave an order upon the firm to B, to pay for goods purchased of him, but such assent was not obtained. No objection was made on that account, however. Held, that B had the right to the money named in the order, and the city would be protected in paying him, even though notified by A not to do so. Certainly under a decision like this, under the circumstances connected with the case at bar, Mrs. Williams must be awarded the funds in the controversy.

Argued orally by *Chalmers Alexander,* for the appellee.

WHITFIELD, C. J., delivered the opinion of the court.

Mrs. Williams' assignment is shown to be valid, and we are unable to see how acts of Wedgeworth, the assignor, after the assignment can affect her rights, which attached at the time of the assignment; and as to the contract about payment of labor and for materials between the city and Wedgeworth, that obviously operates to protect the city, but not in limitation of Mrs. Williams' rights, acquired by a legal transfer.

The action of the city authorities was evidently in good faith, in pursuance of a supposed right to compel Wedgeworth to pay appellant, and the appellant seemed to be under the same misimpression as to the law.

*Affirmed.*